**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Renal Treatment Centers West Incorporated, | No. CV-20-01437-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Allegiant Healthcare West LLC, | |
| Defendant. | |

Before the Court is Defendant Allegiant Healthcare West LLC's ("Defendant") Motion to Withdraw and/or Amend Admissions (Doc. 49). For the following reasons, Defendant's Motion is denied.

## BACKGROUND

Plaintiff Renal Treatment Centers West, Inc. ("Plaintiff") "provides hospitals and skilled nursing facilities with necessary non-physician personnel, including registered nurses and patient care technicians, for certain in-patient and out-patient services." (Doc. 53 at 2.) Defendant operates nursing homes in Mesa and Phoenix. In 2017, Defendant agreed to take over a contract between Plaintiff and a third party ("Amended Acute Services Agreement"). Seven months later, Plaintiff and Defendant entered into a second agreement ("Dialysis Services Agreement"). Both agreements provided that Plaintiff would supply Defendant personnel, supplies, and equipment at its Mesa and Phoenix locations in exchange for payment "on or before the twenty-fifth day of the month

following the month in which the [services] were provided." (Doc. 53 at 3–4.) Defendant admits that it did not pay the invoices related to either agreement, (Doc. 50 at 4), arguing instead that both agreements are invalid or unenforceable. (Doc. 56 at 4.)

Plaintiff served its initial discovery requests, including the requests for admission at issue, on December 30, 2020. The deadline for Defendant's response was originally February 1, 2021, but Plaintiff granted a two-week extension to February 15. Defendant did not meet the deadline, citing ongoing settlement negotiations and the COVID-19 pandemic. (Doc. 50 at 9–10.) Because Defendant failed to respond, all of Plaintiff's requests were deemed admitted pursuant to Federal Rule of Civil Procedure 36(b). Defendant now moves to withdraw three of those admissions: "Admit that the Amended Acute Services Agreement is a valid and enforceable contract"; "Admit that the Dialysis Services Agreement is a valid and enforceable contract"; and "Admit that RTCW did not breach the Amended Acute Services Agreement or the Dialysis Services Agreement." (Doc. 56 at 2 n.2.)

**DISCUSSION**

**I. Legal Standard**

When a party fails to make a timely response to a request for admission, the requests are deemed admitted. Fed. R. Civ. P. 36(a)(3). Any matter that is "admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). The court may permit withdrawal or amendment (1) "if it would promote the presentation of the merits of the action," and (2) "if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." *Id.* However, a court may, in its discretion, decline to grant such a motion even if both factors are present. *Conlon v. United States*, 474 F.3d 616, 625 (9th Cir. 2007). "[I]n deciding whether to exercise its discretion when the moving party has met the two-pronged test of Rule 36(b), the district court may consider other factors, including whether the moving party can show good cause for the delay and whether the moving party appears to have a strong case on the merits." *Id.*

## II. Analysis

Here, Plaintiff has offered no evidence of prejudice. Therefore, only the first prong of the Rule 36(b) test and the discretionary factors are at issue.

### A. Promote the Presentation of the Merits

"The first half of the test in Rule 36(b) is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case." *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995). The relevant question is whether the admission resolves an ultimate issue that precludes the need for any future determination on the merits. *Hadley*, 45 F.3d at 1348 (holding that the first prong was satisfied because the admission "essentially admitted the necessary elements of [the offense]"); *Conlon*, 474 F.3d at 622 (holding that the first prong was satisfied because the admission admitted the lack of causation in a tort case); *see also Sonoda v. Cabrera*, 255 F.3d 1035, 1039–40 (9th Cir. 2001) (holding that the admissions "effectively eliminate[d] a merits determination" as to the plaintiff's First Amendment and due process claims). *Supermarket Energy Techs., LLC v. Supermarket Energy Sols., Inc.*, No. CV-10-2288-PHX-SMM, 2013 WL 12107468, at *3 (D. Ariz. Jan. 9, 2013), does not show otherwise. Although *Supermarket* does have language suggesting that the merits of the defendant's case factors into this prong of the analysis,[1] the merits are more properly analyzed as a discretionary factor. *See Conlon*, 474 F.3d at 625.

In this case, Plaintiff alleges a breach of contract claim against Defendant. (Doc. 53 at 2.) The elements of a breach of contract claim are (1) the existence of a contract; (2) breach; and (3) resulting damages. *First Am. Title. Ins. Co. v. Johnson Bank*, 239 Ariz. 348, 353, 372 P.2d 292, 297 (2016). Here, Defendant's affirmative defenses concern the validity of both contracts—specifically, that the contracts were invalid or unenforceable due to mutual mistake or illegality/impossibility. (Doc. 56 at 4.) The first two of the three admissions at issue effectively foreclose any future discussion on Defendant's two defenses: "Admit that the Amended Acute Services Agreement is a valid and enforceable

---

[1] "Defendant has not articulated any basis for the Court to find that these defenses have merit." *Supermarket Energy Techs., LLC*, 2013 WL 12107468, at *3.

- 3 -

contract" and "Admit that the Dialysis Services Agreement is a valid and enforceable contract." (Doc. 56 at 2 n.2.) Moreover, the third admission states that "[Plaintiff] did not breach the Amended Acute Services Agreement or the Dialysis Services Agreement." (Doc. 53 at 12 n.6.) This admission forecloses any argument that Defendant was discharged from performing due to a breach by Plaintiff. Considering Defendant has admitted—and will not withdraw—"that it did not pay the invoices related to the Acute Services Agreement and . . . it did not pay the invoices related to the Dialysis Services Agreement," the admissions at issue establish all the elements of a breach of contract claim. (Doc. 50 at 4.) Plaintiff and Defendant had valid and enforceable contracts; Defendant failed to pay on those contracts; and Plaintiff suffered damages as a result of the nonpayment. If the admissions are not withdrawn, any presentation of the merits of the case would be unnecessary. Therefore, Rule 36(b)'s first prong is satisfied.

**B. Discretionary Factors**

Because Plaintiff does not claim prejudice, Defendant has satisfied Rule 36(b)'s two-prong test. However, even if the two-prong test is satisfied, the Court may still deny Defendant's Motion based on the discretionary factors. *Conlon*, 474 F.3d at 625. The discretionary factors include (1) whether the moving party can show good cause for the delay and (2) whether the moving party appears to have a strong case on the merits. *Id.*

**1. Good Cause**

Defendant has not shown "good cause" for why it failed to timely respond to Plaintiff's discovery requests. Defendant was well aware of the discovery deadline because it referenced the deadline in a court filing only the week before. (Doc. 30.) Although Defendant attempts to assert that the parties' settlement negotiations provide "good cause," Plaintiff flatly rejected any such notion by refusing to grant an open extension of the deadline to focus on settlement. (Doc. 34-2 at 13, 23.) Additionally, in its scheduling order, this Court quite clearly informed the parties that it did not consider settlement negotiations "good cause": "The pendency of settlement discussions or the desire to schedule mediation *does not constitute good cause*, unless discovery is substantially

complete and the extension requested in minimal." (Doc. 24 at 5 (emphasis added).)[2] Because Defendant can show no reason for its failure to meet the deadline—other than a reason this Court has already stated it would reject—Defendant cannot show good cause to withdraw its admissions.[3]

### 2. Strength of the Case on the Merits

Defendant asserts that the Dialysis Services Agreement is unenforceable because of mutual mistake. (Doc. 50 10–11.) It also contends that both agreements are unenforceable due to "illegality/impossibility." (Doc. 56 at 9.) The Court considers each defense in turn.

#### a. Mutual Mistake

"Mutual mistake of the parties to a written contract makes that contract voidable." *State ex rel. Herman v. Mestas*, 12 Ariz. App. 289, 295, 469 P.2d 855, 861 (1970). "The burden of proving a mutual mistake of law is on the party seeking to avoid the contract and must be by clear and convincing evidence." *Gill v. Kreutzberg*, 24 Ariz. App. 207, 209, 537 P.2d 44, 46 (1975). The elements of mutual mistake are that "(1) the parties made a mistake about a basic assumption on which they made the contract, (2) the mistake had a material effect on the exchange of performances, and (3) the party seeking avoidance does not bear the risk of the mistake." *Hall v. Elected Offs. Ret. Plan*, 241 Ariz. 33, 41–42, 383 P.3d 1107, 1115–16 (2016).

Here, Defendant argues that both it and Plaintiff mistakenly believed that Defendant was the proper party to the contract. (Doc. 56 at 8.) Instead, Defendant argues, Allegiant Healthcare of Phoenix, LLC is the owner of Allegiant Healthcare of Phoenix and thus

---

[2] Although the Court was referring to the deadlines in the Scheduling Order, it appears that Defendant's failure to meet the admissions deadline was not without impact on the Court-ordered deadlines. (Doc. 56 at 6.) While this Motion was pending, Defendant also filed a motion seeking to extend the deadlines "to amend affirmative defenses, take depositions, and to file dispositive motions." (Doc. 76 at 2.)

[3] Moreover, the COVID-19 pandemic does not provide "good cause" to justify Defendant's delay. Defendant does not explain how the pandemic affected discovery other than citing its vaccination efforts in early 2021. (Doc. 50 at 10); (Doc. 56 at 7–8.) But Defendant's attempts to settle this action were not hindered by the pandemic, and Defendant itself admitted that the purpose for the delay was "based solely upon the desire to keep costs low in this litigation to promote settlement." (Doc. 50 at 10.) Therefore, the Court does not find this reason persuasive.

should be responsible for services provided to Allegiant Healthcare of Phoenix. (Doc. 56 at 8.) But Defendant does not show how this alleged mistake satisfies the three-part test for mutual mistake. There is no evidence that the identity of the contracting party was a "basic assumption" on which the parties relied when creating the contract, and Defendant has not shown that the mistake had a material effect on the exchange of performances. Notably, Defendant itself has admitted that it did not substantially perform.[4] Therefore, even if Defendant were to have future discovery in this case, it would not have a strong case on the merits.

### b. Illegality

"Contract provisions are unenforceable if they violate legislation or other identifiable public policy." *1800 Ocotillo, LLC v. WLB Grp., Inc.*, 219 Ariz. 200, 202, 196 P.3d 222, 224 (2008). "In determining whether a provision is unenforceable, courts balance the interest in enforcing the provision against the public policy interest that opposes enforcement." *Id.* The principal question is whether the "enforcement of the term would be injurious to the public welfare." *Id.*

Here, Allegiant alleges that the agreements violated 42 C.F.R. § 413.210. That provision states,

> Except as noted in § 413.174(f), items and services furnished on or after January 1, 2011, under section 1881(b)(14)(A) of the Act and as identified in § 413.217 of this part, are paid under the ESRD [End-Stage Renal Disease] prospective payment system described in § 413.215 through § 413.235 of this part.
>
> > (a) Qualifications for payment. To qualify for payment, ESRD facilities must meet the conditions for coverage in part 494 of this chapter.

---

[4] In addition to failing to meet the three-part test, Defendant's contention that it mistakenly assumed it was the owner of Allegiant Healthcare of Phoenix is dubious. If, as Defendant contends, the two entities are separately operated and controlled, (Doc. 53-12 at 2), it makes little sense that Defendant would think itself responsible for Allegiant Healthcare of Phoenix's debts. Because Defendant has offered no evidence that it was ever under such a belief, the Court finds Defendant's case for mutual mistake unpersuasive.

>   (b) Payment for items and services. CMS [Centers for Medicare & Medicaid Services] will not pay any entity or supplier other than the ESRD facility for covered items and services furnished to a Medicare beneficiary. The ESRD facility must furnish all covered items and services defined in § 413.217 of this part either directly or under arrangements.

42 C.F.R. § 413.210 (2021). Essentially, Defendant contends that because it is a nursing home, it is not an ESRD facility, and cannot bill Medicaid for dialysis under § 413.210. However, Defendant fails to articulate why its inability to bill Medicare makes the agreements illegal. Although Plaintiff, as the ESRD facility, *could* have billed Medicare for the services provided, it was not *mandated* to do so, and, in fact, it was forbidden to do so through the very language of the agreements.[5] Defendant's acceptance of the contracts despite not being able to bill Medicare to recoup its costs was likely a poor business decision—but a poor business decision does not make a contract illegal. Defendant's case for illegality weighs against granting the Motion to Withdraw.

### c. Impossibility

"It is well settled that when, due to circumstances beyond the control of the parties the performance of a contract is rendered impossible, the party failing to perform is exonerated." *Mobile Home Ests., Inc. v. Levitt Mobile Home Sys., Inc.*, 118 Ariz. 219, 222, 575 P.2d 1245, 1248 (1978) (quoting *Garner v. Ellingson*, 18 Ariz. App. 181, 182, 501 P.2d 22, 23 (1972)). "[A] contract is discharged where its purpose is frustrated and rendered impossible of performance by a supervening event not reasonably foreseeable." *Id.*

42 C.F.R. § 413.210 became effective on January 1, 2011. Defendant entered into the Amended Acute Services Agreement in 2017 and the Dialysis Services Agreement in 2018. (Doc. 53 at 3–4.) The regulation was already in effect—and thus completely foreseeable—when Defendant entered these agreements. Therefore, Defendant's case for impossibility is weak.

---

[5] "Company shall not bill or collect from any patient or third-party payor any fee or charge for the Services rendered hereunder." (Doc. 50-1 at 21); (Doc. 50-2 at 31).

**C. Whether the Discretionary Factors Weigh Against Granting the Motion**

Although Defendant meets the two-part test for withdrawal, this Court will exercise its discretion and deny Defendant's motion. Defendant has a history of failing to comply with deadlines. Aside from missing the discovery deadline at issue, which had already been extended, Defendant also missed two other deadlines. First, Defendant did not provide Plaintiff with its initial disclosure statement until March 25, 2021—well after the November 20, 2020 deadline, which was itself subject to an extension. (Doc. 24 at 1); (Doc. 53 at 6.) Second, Defendant failed to have an attorney enter an appearance before December 30, 2020, in contravention of this Court's order. (Doc. 26 at 2); (Doc. 29); (Doc. 34-1 at 3.) In addition to the three missed deadlines, during the Scheduling Conference on November 20, 2020, this Court ordered Defendant to set forth with specificity its alleged defenses in the initial disclosure statement. When Plaintiff received Defendant's initial disclosure statement—125 days late—no explanation of the defenses was included. (Doc. 53-3.) Moreover, after the filing of this Motion, the parties twice represented to the Court that this case was settled, (Doc. 58); (Doc. 60), and based on those representations, the Court granted an extension of time, (Doc. 61).[6] Despite these representations, nearly three and half months later, the parties still have not settled. (Doc. 72); (Doc. 76). Finally, Plaintiff contends, and Defendant does not appear to contest, that Defendant has produced only seven pages of original discovery to Plaintiff throughout the entirety of this litigation.[7] (Doc. 53 at 9); (Doc. 53-7 at 1–105); (Doc. 53-8 at 1–7.) The Court finds the discretionary factors controlling and that Defendant has not acted in good faith.

**CONCLUSION**

Despite Defendant's satisfying the Rule 36(b) test, the discretionary factors weigh against granting its motion. Accordingly, its Motion to Withdraw Admissions is denied.

---

[6] The Court also granted an extension after Defendant—belatedly—hired new counsel. (Doc. 47); (Doc. 48); (Doc. 26.)

[7] It appears that Defendant merely re-numbered and re-disclosed much of Plaintiff's disclosure as part of its own.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Withdraw Admissions (Doc. 49) is **DENIED**.

Dated this 17th day of September, 2021.

_____
G. Murray Snow
Chief United States District Judge